**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 06-cv-01282-REB-MEH
(Consolidated with 07-cv-02477-REB-MEH)

URSULA DABERKOW, Individually and as Personal Representative of the Estate of WAYNE D.
DABERKOW, deceased,[1]

      Plaintiffs,
v.

UNITED STATES OF AMERICA,

      Defendant.

---

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDERS

---

Blackburn, J.

      This matter came before me for nonjury trial on September 29 through October 1, 2008.

      Having judicially noticed all relevant adjudicative facts in the file and record of this case

*pro tanto*; having considered and accepted the stipulations[2] of the parties; having considered

the evidence educed in its various forms;[3] having determined the credibility of the witnesses;

having weighed the evidence; having considered the reasons stated, arguments advanced, and

the authorities cited by the parties in written and oral form; and being otherwise sufficiently

advised, I enter the following findings of fact established by a preponderance of the evidence,

---

      [1] The caption must be fashioned this way to recognize that Ursula Daberkow asserts a claim for
relief in her own right and brings a survival action as personal representative of her late husband's estate
under §13-20-101, C.R.S.

      [2] Thus, I accept as fact those facts to which the parties stipulated during the nonjury trial and in
the **Final Pretrial Order** [#81] at 5-7, ¶ 4.a.-l., entered effective September 24, 2008, *see* order [#93] at 3,
entered October 28, 2008.

      [3] The evidence consisted of the facts stipulated, the sworn testimony of the witnesses, all exhibits
admitted in evidence (including Exhibit 96, a DVD titled, "In Loving Memory of Wayne Delmer Daberkow"),
and the admissible potions of the videotaped (DVD) trial preservation depositions of Dr. Charles Frankum
and Dr. Wayne E. Hoppe (*see* **Order Granting Defendant's Motion *In Limine* To Exclude Undisclosed
Expert Opinions By DRS. Hoppe And Frankum** [#99] entered October 29, 2008).

conclusions of law,[4] and orders.[5]

## FINDINGS OF FACT

1.  I accept the facts, without necessarily reiterating all of them, to which the parties stipulated in the **Final Pretrial Order**, (*see* [#81] at 5-7, ¶ 4.a.-l., entered effective September 24, 2008, *see* order [#93] at 3, entered October 28, 2008.)

2.  At all relevant times Wayne D. Daberkow and his wife Ursula D. Daberkow were citizens of the United States and residents of Kit Carson, Colorado. Plaintiffs' claims for relief involve acts, conduct, and omissions that occurred in Colorado.

3.  At all relevant times between October 19, 2000, and August 24, 2004, Wayne D. Daberkow was over fifty years of age.

4.  At all relevant times between October 19, 2000, and August 24, 2004, Dr. Sylvia P. Sydow was an employee of the United States Department of Veterans Affairs ("VA") working at the Denver Veterans Affairs Medical Center ("DVAMC").

5.  At all relevant times between October 19, 2000, and August 24, 2004, Dr. Sylvia P. Sydow examined and treated Wayne D. Daberkow as his primary care provider at the DVAMC.

6.  Dr. Sylvia P. Sydow physically examined Wayne D. Daberkow at the DVAMC on the following dates: October 19, 2000; January 10, 2002; January 29, 2003; March 26, 2003; September 3, 2003; March 26, 2004; and, August 6, 2004.

7.  Wayne D. Daberkow was first seen for a primary care visit at the DVAMC by Dr. Sylvia P. Sydow, a primary care physician, on October 19, 2000.  At the time of that visit, he was 54 years old.

---

[4]  Any finding of fact deemed more properly a conclusion of law, or any conclusion of law deemed more properly a finding of fact, shall be as more properly characterized.

[5]  I state my findings of fact specifically and conclusions of law separately as required by Fed.R.Civ.P. 52(a)(1).

8.  Prior to October 19, 2000, Mr. Daberkow did not have a regular primary care physician and had not been seeing any physician for annual wellness examinations.  He went to see Dr. Sydow because the VA required him to have a primary care physician.

9.  During the October 19, 2000, visit Dr. Sydow took a medical history from Mr. Daberkow.  Nothing in that medical history indicated that Mr. Daberkow had any personal or family history of adenomas, colon cancer, or any other risk factor for colon cancer.  Mr. Daberkow was asymptomatic and not at any increased risk of contracting colon cancer.  Mr Daberkow was of "average risk."

10.  During the October 19, 2000, visit, Dr. Sydow also performed a complete wellness examination of Mr. Daberkow, including taking his history on various issues, physically examining him, ordering screening tests for prostate and colon cancer, ordering laboratory blood work, counseling him to quit smoking, and screening him for depression and alcohol abuse. She discussed colon cancer screening via a fecal occult blood test ("FOBT")  with him, gave him a rectal examination, submitted a sample of his stool from that examination for hemoccult testing, and prescribed a FOBT to screen for colon cancer. The FOBT protocol required Mr. Daberkow to take stool samples from three different bowel movements, place them on cards, and return those cards (either by mail or in person) to the DVAMC laboratory for testing.  Mr. Daberkow failed to return the cards that were prescribed for him during that visit. The test from the stool sample taken by Dr. Sydow during the examination came back negative for symptoms of colorectal cancer.

11.  Mr. Daberkow was counseled to come in a year after the October 19, 2000, visit for his next physical.  He failed to do so.  Instead, he returned on January 10, 2002, approximately 15 months after his first one, for an annual examination.  Dr. Sydow again performed a complete wellness exam. She again discussed colon cancer screening via FOBT, she again gave him a rectal examination, and she again prescribed a FOBT for him.  This time Mr.

Daberkow returned the cards, and on February 1, 2002, the test results came back negative for symptoms of colorectal cancer.

12. Mr. Daberkow next saw Dr. Sydow on January 29, 2003, for an annual wellness exam. She again discussed colon cancer screening via FOBT, she again gave him a rectal examination, and she again prescribed a FOBT for him. Mr. Daberkow returned the cards, and on February 23, 2003, the test results came back negative for symptoms of colorectal cancer.

13. On March 26, 2003, Mr. Daberkow came to the DVAMC complaining of dermatitis and ankle pain. He was seen by Dr. Sydow, who charted, *inter alia*, that his most recent hemoccult test on February 22, 2003, was negative. During the March 26, 2003, visit she performed a rectal examination, the results of which were normal.

14. Dr. Sydow next saw Mr. Daberkow on September 3, 2003, to follow up on his complaints of dermatitis and ankle pain. She again charted, *inter alia*, that the February, 2003, hemoccult test was negative for symptoms of colorectal cancer.

15. On March 26, 2004, Dr. Sydow saw Mr. Daberkow again for a wellness exam. She performed a rectal examination, which was normal. She again discussed colon cancer screening via FOBT with him and placed an order for cards for fecal occult blood testing. Mr. Daberkow failed to return those cards for testing.

16. On August 6, 2004, Mr. Daberkow came to the DVAMC complaining that he was experiencing cramping after injections of a new medication for dermatitis. Dr. Sydow noted that Mr. Daberkow had failed to return the FOBT cards that she had prescribed for him on the last visit. She ordered another set of cards and reminded Mr. Daberkow to return them for testing. Mr. Daberkow again failed to return the cards.

17. At all times relevant between October 19, 2000, and August 24, 2004, nothing in the information that Mr. Daberkow provided to his health care providers at the DVAMC, including Dr. Sylvia P. Sydow, indicated that he was at high or increased risk for developing colon cancer.

According to the information Mr. Daberkow provided to his health care providers at the DVAMC, including Dr. Sylvia P. Sydow, he presented as asymptomatic and of average risk for colorectal cancer.

18. Dr. Sylvia P. Sydow did not discuss with or recommend to Mr. Daberkow that he be screened for colorectal cancer by a colonoscopy or a combination of barium enema and sigmoidoscopy on any of the following dates: October 19, 2000; January 10, 2002; January 29, 2003; March 26, 2004; and August 6, 2004.

19. Dr. Sylvia P. Sydow did not prescribe or order a colonoscopy or a combination of barium enema and sigmoidoscopy for Wayne D. Daberkow on any of the following dates: October 19, 2000; January 10, 2002; January 29, 2003; March 26, 2004; and August 6, 2004.

20. On September 8, 2004, Mr. Daberkow was seen by a private physician for abdominal pain. He underwent a CT[6] scan, which revealed a mass in the colon. On September 10, 2004, the mass was biopsied. The biopsy revealed that Mr. Daberkow was suffering from advanced adenocarcinoma (T4, N1, MX classification – Dukes C2) that had invaded through the colon wall into the adjacent bowel and abdominal wall.

21. On June 28, 2007, Wayne D. Daberkow died of metastatic colon cancer.

22. At all times relevant between October 19, 2000, and August 24, 2004, various tests were available to screen patients for colorectal cancer: FOBT, flexible sigmoidoscopy, barium enema, and colonoscopy.

23. A fecal occult blood test (FOBT) checks for occult (hidden) blood in the feces (stool). A patient places a small amount of his stool from three bowel movements on test cards in the privacy of the patient's home. The patient then returns the cards to the doctor's office or to a laboratory where the cards are checked for blood by using microscopic analysis to

---

[6] Pursuant to Fed.R.Evid. 201, I take judicial notice that a "CT" scan is a scan using computer axial tomography.

determine whether the level of fecal blood is elevated. the medical efficacy of a FOBT as a screening test is enhanced because it includes the evaluation of three separate samples. FOBT is a useful diagnostic tool because approximately 80 per cent of patients with colorectal cancer will have a positive FOBT result. If the FOBT result is positive, follow-up will be conducted, and a colonoscopy may be ordered. If a FOBT is used for screening, it is generally done annually. The benefits of screening by FOBT include its low cost and its lack of risk of any sort of injury. A FOBT is non-invasive, and the stool samples can be collected in the privacy of the patient's home, which increases the likelihood that patients will comply with the test.

24. At all relevant times between October 19, 2000, and August 24, 2004, the guidelines issued by a number of prestigious medical associations, including the American Cancer Society, the American Academy of Family Physicians, the American Gastroenterlogical Association, and the American Society of Colon and Rectal Surgeons, recognized FOBT as an acceptable method to screen for colorectal cancer.

25. At some or all relevant times between October 19, 2000, and August 24, 2004, relevant governmental agencies, including the Department of Health and Human Services and the U.S. Preventive Services Task Force, recognized FOBT as an acceptable method to screen for colorectal cancer.

26. Relevant information from learned treatises was presented at trial, which information showed, *inter alia*, that in 2003 – three years after Mr. Daberkow's first visit with Dr. Sydow – a national survey of primary care physicians was published and noted that 95 per cent of survey respondents in 1999 and 2000 recommended FOBT as a colon cancer screening method for average-risk patients. (Trial Ex. 45 at 355.) Similarly, a study published in the New England Journal of Medicine in 2000 – the year that Mr. Daberkow first saw Dr. Sydow – found that "[t]he use of either annual or biennial fecal occult-blood testing significantly reduced the incidence of colorectal cancer." (Trial Ex. 46 at 1607.)

27.  At all relevant times between October 19, 2000, and August 24, 2004, it was reasonable and within duty and the standard of care for primary care physicians, including physicians in the VA, including Dr. Sylvia P. Sydow, to screen for colorectal cancer using only fecal occult blood tests.

28.  At all relevant times between October 19, 2000, and August 24, 2004, it was reasonable and within the standard of care for Dr. Sylvia P. Sydow to screen Wayne D. Daberkow for colorectal cancer using only fecal occult blood tests.

29.  The testimony of Dr. Wolfram Samlowski and Dr Stephen Freeman, who testified as expert witnesses for the defendant, was comparatively more credible and cogent than that of Dr. John Goff, who testified as an expert witness for the plaintiffs, on the issue of whether, in the time-frame from 2000 to 2004, it was reasonable and within the duty and standard of care for primary care physicians, including physicians employed by the VA, to screen for colorectal cancer by FOBT, as opposed to complete colonoscopy or a combination of flexible sigmoidoscopy and barium enema.

## CONCLUSIONS OF LAW

1.  I have jurisdiction over the parties to this action. I have exclusive subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b)(1) (United States as defendant), and 28 U.S.C. §§ 2671-2680  (Federal Tort Claims Act).

2.  Venue is proper in the United States District Court for the District of Colorado under 28 U.S.C. § 1391(a)(2).

3.  Pursuant to 28 U.S.C. § 2675(a), the conditions precedent to instituting a claim against the United States have been satisfied.

4. In assessing the credibility of each witness who testified at trial, I have considered all facts and circumstances shown by the evidence that affect the credibility of each witness, including the following factors: each witness' means of knowledge, his or her ability to observe,

and his or her strength of memory; the manner in which each witness might be affected by the outcome of the litigation; the relationship each witness has to either side in the case; and the extent to which each witness is either supported or contradicted by other witnesses or evidence presented at trial.

5.  This is an action for medical malpractice brought against the United States as a defendant under 28 U.S.C. § 1346(b)(1) and under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680.

6.  The United States, as sovereign, is immune from suit except to the extent that it consents to be sued, and the terms of its consent are set forth expressly and specially by Congress, who defines the parameters of the federal district court's jurisdiction to entertain suits brought against the United States.  *See Honda v. Clark*, 386 U.S. 489, 501 (1967), *and authorities cited therein.*

7.  The alleged negligent acts or omissions occurred in Colorado.  Accordingly, Colorado law governs the issue of liability.  *See* 28 U.S.C. § 1346(b); *Richards v. United States*, 369 U.S. 1 (1962); *Wark v. United States*, 269 F.3d 1185, 1187 (10th Cir. 2001).

8. The burden of persuasion requires a preponderance of the evidence. §13-25-127(1), C.R.S. (". . . the burden of proof in any civil action shall be by a preponderance of the evidence.")

9.  Generally, to recover on a claim for negligence, the plaintiff must establish the existence of a legal duty on the part of the plaintiff, a breach of that duty, causation, and damages. *United Blood Services, Inc. v. Quintana*, 827 P.2d 509 (Colo. 1992).  Specifically, in a medical malpractice suit, which under Colorado law is essentially a suit for negligence, a plaintiff has the burden of proof to establish by a preponderance of the evidence four elements to establish a prima facie case: (1) that a legal duty was owed by the defendant-physician to the plaintiff-patient; (2) that the defendant-physician breached that duty; (3) that the plaintiff-patient

suffered an injury; and (4) that the defendant's breach caused the plaintiff's injury. *Rodriguez &*
*Rodriguez v. HealthOne*, 24 P.3d 9, 14 (Colo.App. 2000). *See also* CJI-Civ. 4th 9:1. In
Colorado, unless the subject matter of the medical malpractice lies within the ambit of common
knowledge or experience of ordinary persons, the plaintiff-patient must establish through expert
testimony: (1) the controlling standards of care; (2) the defendant's failure to adhere to that
standard; and (3) such departure from the standards of care caused plaintiff's injuries. *Melville*
*v. Southward*, 791 P.2d 383, 387 (Colo. 1990).

10. Plaintiffs claim "that Healthcare providers at the DVAMC had a duty to exercise the
same level of knowledge and skill that other healthcare providers practicing in the same fields of
medicine would have exercised at the same time under the same or similar circumstances; and,
(sic) that Healthcare providers at DVAMC breached that duty by failing to properly screen
decedent Wayne D. Daberkow, (sic) for colon cancer." Final Pretrial Order [#81] at 2, ¶ 3.a.[7]
The gravamen of plaintiffs' claim is that Dr. Sylvia P. Sydow, a primary care physician employed
by the Veterans' Administration, breached the standard of care and duty applicable to primary
care physicians between October 19, 2000, and August 24, 2004, by failing to screen the
decedent, Wayne D. Daberkow, for colorectal cancer by means other than fecal occult blood
tests.

11. Based on the facts that I have found from the relevant evidence admitted at trial, I

---

[7] Plaintiffs' claim as phrased in the **Final Pretrial Order** [#81] entered September 24, 2008,
coincides ver betim with plaintiff's claim as phrased in the initial **Final Pretrial Order** [#45] entered June
27, 2007. *See* Final Pretrial Order [#45] at 2, ¶ 3.a. In turn, plaintiffs' claim as stated in the initial and
subsequent final pretrial orders is substantially similar to the claims stated in the **Complaint** filed on July
3, 2006, in civil action 06-cv-01282-REB-MEH (*see* Complaint [#1] at 3, ¶ 19) ("Healthcare providers at
DVAMC breached that duty by failing to properly screen Mr. Daberkow for colon cancer by prescribing or
performing either a complete colonoscopy or a combination of flexible sigmoidoscopy and barium
enema.") and in the **Complaint** filed on November 29, 2007, 07-cv-02477-MSK-CBS (now 07-cv-02477-
REB-MEH) (*see* Complaint [#1] at 4, ¶ 27) ("Healthcare providers at DVAMC breached that duty by failing
to properly screen Wayne D.Daberkow for colon cancer by recommending, offering, prescribing or
performing either a complete colonoscopy or a combination of flexible sigmoidoscopy and barium
enema.")

conclude that Dr. Sylvia P. Sydow did not breach the standard of care or duty applicable to primary care physicians between October 19, 2000, and August 24, 2004, by failing to screen the decedent, Wayne D. Daberkow, for colorectal cancer by means other than fecal occult blood tests. Instead, I conclude on the facts that I have found that at all relevant times between October 19, 2000, and August 24, 2004, it was reasonable and within the standard of care for primary care physicians, including physicians employed by the VA, including Dr. Sydow, to screen for colorectal cancer using only fecal occult blood tests. Conversely, I conclude that at all relevant times between October 19, 2000, and August 24, 2004, the standard of care and duty to screen for colorectal cancer for primary care physicians, including Dr. Sydow as a VA physician, did not require the offer, recommendation, or prescription to screen using a complete colonoscopy or a combination of flexible sigmoidoscopy and barium enema.[8]

12.   Based on the facts that I have found from the relevant evidence admitted at trial, I conclude also that at all relevant times between October 19, 2000, and August 24, 2004, it was reasonable and within the apposite duty and standard of care for Dr. Sylvia P. Sydow to screen Wayne D. Daberkow for colorectal cancer using only fecal occult blood tests without first discussing, offering, or prescribing screening by colonoscopy or a combination of flexible sigmoidoscopy and barium enema.

13.   Alternatively, I conclude that plaintiffs have not sustained their burden of proof to establish by a preponderance of the evidence (1) that the apposite duty and standard of care required primary care physicians in the same or similar circumstances of Dr. Sydow to screen for colorectal cancer using a complete colonoscopy or a combination of flexible sigmoidoscopy and barium enema; or (2) that the apposite duty and standard of care required primary care physicians in the same or similar circumstances of Dr. Sydow to discuss and offer screening by

---

[8] Because I have found and concluded that Dr. Sydow did not act unreasonably and did not breach the apposite standard of care, I do not reach the related issues of causation and damages.

colonoscopy or a combination of flexible sigmoidoscopy and barium enema.

14.  Finally, to the extent that any claim, affirmative defense, defense, objection, or argument is not specifically addressed in this opinion or in any other relevant order, I have considered, but rejected it.

**ORDERS**

**THEREFORE, IT IS ORDERED** as follows:

1. That judgment **SHALL BE ENTERED** for the defendant, the United States of America, against the plaintiffs, Ursula Daberkow, Individually, and as Personal Representative of the Estate of Wayne D. Daberkow, deceased, on the claims for relief of the plaintiffs; and

2. That the defendant, the United States of America, is awarded its costs to billed and taxed in the time and manned provided by Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated January 23, 2009, at Denver, Colorado.

BY THE COURT:

Bob Blackburn
Robert E. Blackburn
United States District Judge